Beverly A. EICHLER, Plaintiff,

v.

RIDDELL, INC., Defendant.

No. 95 C 3782.

United States District Court, N.D. Illinois.

April 11, 1997.

Vicki Lafer Abrahamson, Abrahamson, Vorachek & Mikva, Chicago, IL, for plaintiff.

Adrianne C. Mazura, Tracy Lee Bradford, Rudnick & Wolfe, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

Before the Court is Defendant's Motion to Amend Judgment. For the reasons set forth below, the Motion is denied.

## Background

On January 21, 1997, the jury rendered its verdict, finding that Defendant terminated Plaintiff on the basis of her age and awarded her $58,807.00 in compensatory damages. Immediately after reading the jury's verdict, the Court inquired as to whether Defendant would offer reinstatement to Plaintiff. Defendant stated that it was unlikely that it would offer reinstatement to Plaintiff and requested that a hearing be held on the issue of front pay, which hearing was held on January 24, 1997.

Prior to the opening of the hearing on January 24, 1997, the Court again inquired as to whether Defendant would offer reinstatement to Plaintiff, and was informed that it would not do so. Accordingly, the front pay hearing was held, at which Defendant offered the testimony of Chris Erath, an expert witness, regarding the likelihood that Plaintiff would obtain a position comparable to the one which she was discriminatorily denied by Defendant and the probable age at which she would have retired from Defendant had she not been terminated.

During the trial of this case—in an effort to convince the jury that Plaintiff's age was not a factor in her non-selection for the Director of Customer Service position—Defendant's management witnesses painted a picture of Plaintiff as being less than an ideal employee, not being competent to handle the newly-created position because of changes resulting from the combining of and reorganization of three departments, and her alleged inability to interact appropriately with her superiors. In support of its arguments against a substantial front-pay award, Defendant noted Plaintiff's alleged shortcomings in this regard and argued that, based on such shortcomings, it is probable that Plaintiff would eventually have been terminated for cause had she not been discriminatorily terminated.

On February 20, 1997, the Court issued a Memorandum Opinion and Order, rejecting the testimony of Mr. Erath, and the arguments of Defendant to the extent that they asserted that it is unlikely that Plaintiff would have continued to work until she reached the age of 70—as she testified—had she not been discriminatorily discharged by Defendant. The Court, therefore, found that Plaintiff is entitled to a front-pay award of $420,309.00.

On March 6, 1997, Defendant made an offer of reinstatement to Plaintiff, "in lieu of front pay." The offer specifically stated that it was contingent upon the Court amending the February 20, 1997 Judgment to limit the amount of front pay to the period between January 21, 1997 and the date of her reinstatement. The offer was to "reinstate" Plaintiff to the position that she would have been promoted to in December, 1993 had she not been discriminatorily denied that position in favor of Harry Hightman, a younger, less experienced individual. At the time of the March 6, 1997 offer, Mr. Hightman was slated for extinction, but had not yet been informed. Mr. Hightman was subsequently terminated. For good reasons, Plaintiff would rather retain her hard-fought award of $420,309.00 than risk reinstatement with the possibility that she would eventually be terminated.

## Discussion

Defendant, citing *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994) and *McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 114 (7th Cir.1986), correctly asserts that reinstatement is the preferred remedy in age discrimination cases and that an *unreasonable* refusal of an offer to reinstate will preclude recovery of front pay. Plaintiff argues that, under the circumstances of this case, it would not be unreasonable for her to refuse Defendant's belated, half-hearted offer of reinstatement. The Court agrees.

From all credible accounts, Plaintiff—who worked for Defendant for 39–1/2 years—was a loyal, competent employee who worked her way up from a teen-age factory employee to Defendant's Director of Customer Relations. She was Defendant's first female director. All of Plaintiff's performance evaluations over the years were excellent overall. After Plaintiff's termination, one of the top officials in the company wrote a highly complimentary letter of reference on her behalf, pointing

out her significant achievements for the company. At trial—with the exception of *current* company officials—Plaintiff's former co-workers and superiors gave her high marks. It was clear to the Court—and the jury—that Defendant's current officials went overboard in their efforts to show that Plaintiff was not the excellent employee depicted in her performance appraisals.

On the other hand, Harry Hightman—whose qualifications for the newly-created position clearly were inferior to those of Plaintiff—was portrayed as a savior who had taken over the newly-created position and had done—and was still doing, at the time of the trial—an excellent job. Mr. Hightman also testified at the trial in an attempt to show his superior qualifications and the great job he had done. Presumably, Mr. Hightman did not know, at the time of his testimony, that he would be out of a job less than two months later and that Plaintiff—who was supposedly less qualified—would be asked to replace him. Having experienced first-hand, and now having observed, how expendable a loyal employee such as Mr. Hightman became in less than two months, it would not be unreasonable for Plaintiff to question Defendant's sincerity in offering to reinstate her.

Defendant makes much of the fact that what it is now offering to Plaintiff is exactly what she has insisted, throughout the pendency of the Complaint, that she wanted—reinstatement to the newly-created position or even to a lesser position. Defendant's Reply Memorandum in Support of Its Motion to Amend Judgment ("Def's. Reply Mem.") at 3–5. It is not surprising that as late as five months before the trial, Plaintiff would have favored reinstatement, even to a lower position, rather than gamble that she would obtain an unfavorable verdict. It is noted, however, that, at that time, Plaintiff had not sat in a courtroom and heard management officials express their opinions regarding her relative worth to the company after 39–1/2 years of faithful service.

Finally, the Court notes the timing of Defendant's offer of reinstatement, coming just two weeks after the Court rejected its arguments that Plaintiff was entitled to less than one-third of the amount awarded. This leads to the conclusion that Defendant had decided to proceed with the front-pay hearing, including the testimony of its expert witness—and hoped that the Court would be persuaded that Plaintiff was entitled to only a few thousand dollars in front pay. Then, depending on its total liability, Defendant could either terminate Mr. Hightman and offer his job to Plaintiff or pay Plaintiff the minimal amount awarded and keep Mr. Hightman in his position. Defendant may not elect its own remedies in this manner.

### *Conclusion*

Considering the foregoing, the Court finds that Plaintiff is not obligated to accept Defendant's offer of reinstatement and that, therefore, her refusal to accept such offer is not unreasonable.

Accordingly, IT IS HEREBY ORDERED THAT Defendant's Motion to Amend Judgment be, and the same hereby is, denied.