**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 17 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FRED L. BOYKIN,

            Plaintiff-Appellant,

v.                                                              No. 00-1318

ATC/VANCOM OF COLORADO,
L.P., a Colorado limited partnership,

            Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 99-N-588)**

---

Submitted on the briefs:

Elwyn F. Schaefer and Scott F. Reese of Elwyn F. Schaefer & Associates, P.C.,
Denver, Colorado, for Plaintiff-Appellant.

J. Scott Lasater and Sharon P. Kelly of Lasater & Allen, P.C., Littleton, Colorado,
for Defendant-Appellee.

---

Before **SEYMOUR** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

**SEYMOUR** , Circuit Judge.

---

Plaintiff Fred L. Boykin appeals from an order of the district court granting summary judgment to defendant ATC/VanCom of Colorado in this action under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. We affirm. [1]

## I.

Mr. Boykin began working part-time as a bus driver for VanCom in 1997. During the time he was employed by VanCom, he was also a full-time college student. Mr. Boykin asserted that VanCom was aware of his school schedule and had agreed to schedule his working hours around his school requirements.

Mr. Boykin has a history of suffering transient ischemic attacks (TIA) or mini-strokes. The first occurred in 1996, before he began his employment with VanCom. He experienced a possible second TIA while working for VanCom as a dispatch operator. In 1998, he suffered a third TIA while driving a bus for VanCom. After the third TIA, his personal physician released him to return to work. VanCom, however, required that he be examined by one of its physicians. That physician revoked Mr. Boykin's medical certification for commercial driving. Mr. Boykin's certification was to be reinstated in one year if he

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

experienced no further TIAs during that time and was medically cleared by a neurologist. This action complied with Department of Transportation (DOT) guidelines. See, e.g., Appellant's App. at 11 n.3. In the interim period, Mr. Boykin was disqualified only from driving commercial vehicles.

Mr. Boykin requested that VanCom accommodate his disability by placing him as a dispatch operator or data entry clerk. The only position VanCom had open at that time was that of a bus cleaner. Mr. Boykin declined the position because it conflicted with his school schedule. He was then terminated.

Six months later, VanCom entered into a new contract with the Regional Transportation District (RTD). As a result, new positions became available and VanCom hired new personnel, including a dispatch operator. VanCom notified Mr. Boykin of the opening but required that he apply and interview for the job. He was interviewed, but was not hired.

Mr. Boykin commenced this action in Denver County District Court, alleging that in order to comply with the strictures of the ADA, VanCom was obliged to assign him to the new dispatcher position without requiring that he compete with other applicants. Mr. Boykin asserted that under the ADA he had a right to the position despite the six-month interval between his termination and the job's availability. Mr. Boykin also contended VanCom violated the ADA when it offered him the bus cleaner position because it was aware that the

schedule conflicted with his school schedule. Mr. Boykin asserted that VanCom did not enter into the good-faith interactive process required by the ADA.

VanCom removed the case to federal district court. The district court granted summary judgment to VanCom, holding that it fulfilled its obligations under the ADA when it offered Mr. Boykin the bus cleaner position. The court concluded that VanCom was under no obligation to offer Mr. Boykin a position six months after his termination.

On appeal, Mr. Boykin contends the ADA does not permit an employer to offer a position, here the bus cleaner position, which it knows the employee cannot accept. Mr. Boykin also asserts VanCom did not enter into a good-faith interactive process in an effort to accommodate his disability, and maintains VanCom was required to offer him the position that became available six months after his termination as a reasonable accommodation under the ADA. [2]

---

[2] Although Mr. Boykin's personal physician released him to return to his position of commercial passenger bus driver, he does not, nor could he, take issue with VanCom's decision to follow its physician's recommendation and the DOT guidelines' requirement that he remain TIA free for one year before being permitted to drive a commercial passenger vehicle. See, e.g. , Myers v. Hose , 50 F.3d 278, 282 (4th Cir. 1995) (bus driver must be able to perform duties without threatening safety of passengers or other motorists).

## II.

"We review the entry of summary judgment de novo, drawing all reasonable inferences in favor of the nonmovants." Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994). The moving party must show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Id. The nonmovant must establish, at a minimum, "an inference of the existence of each element essential to the case." Id.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability" in employment actions. 42 U.S.C. § 12112(a). A "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Id. § 12102(2). A "qualified individual with a disability" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).

Mr. Boykin claims he is substantially limited in the major life activity of working. We have held that "[w]orking is a major life activity" under the ADA. Siemon v. AT&T Corp., 117 F.3d 1173, 1176 (10th Cir. 1997) (quotation omitted); but see Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92 (1999)

(noting in dicta "that there may be some conceptual difficulty in defining 'major life activities' to include work").

> [T]o qualify for relief under the ADA, a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA[3]; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.

White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995).

The main dispute here centers around whether VanCom failed to offer Mr. Boykin a reasonable accommodation for the period during which he was disabled from driving a passenger bus. Mr. Boykin posits that this period would have lasted one year from the date of his third TIA. However, if he had suffered another TIA during that period, his inability to drive a commercial passenger vehicle would have been extended. VanCom required that Mr. Boykin remain free of *any* TIA's for one year before he could drive again. Thus, if Mr. Boykin continued to suffer attacks, VanCom could be under an indefinite obligation to accommodate his disability.

---

[3] The district court found that Mr. Boykin met this factor, and VanCom does not dispute this. We will therefore assume Mr. Boykin is disabled although this conclusion could be disputed. "To be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton, 527 U.S. at 492. Mr. Boykin testified that he did find a position driving commercial passenger vehicles for another company, apparently during the time VanCom would not permit him to drive. See Appellant's App. at 111:34.

If the plaintiff can make a facial showing that accommodation is possible, the employer must then show it is unable to provide accommodation to avoid liability under the ADA. Id. at 361. Mr. Boykin and VanCom agree that VanCom was unable to provide him with his requested accommodation at the time of his termination. Nevertheless, Mr. Boykin claims VanCom should have placed him on indefinite leave because it was attempting at the time to obtain a new contract with RTD and, as a result of that contract, would have a new dispatcher position available.

Under the ADA, a reasonable accommodation may include reassignment to a vacant position for which the employee is qualified. 42 U.S.C. § 12111(9)(B); see also Smith v. Midland Brake, Inc., 180 F.3d 1154, 1174-75 (10th Cir. 1999). "'[A] vacant position' includes not only positions that are at the moment vacant, but also includes positions that the employer reasonably anticipates will become vacant in the fairly immediate future." Smith, 180 F.3d at 1175. We are not persuaded, however, that reasonable accommodation obligates a disabled employer to place an employee on indefinite leave until a position for which he is qualified opens up. See Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1187 (6th Cir. 1996); cf., Hudson v. MCI Telecomms. Corp., 87 F.3d 1167, 1169 (10th Cir. 1996) ("the ADA does not require an employer to grant an employee indefinite leave as an accommodation").

Employers should reassign an employee to a position if it becomes "vacant within a reasonable amount of time." 29 C.F.R. pt. 1630, App. § 1630.2(o) (2000). The determination of what comprises a "reasonable amount of time" is to be made on a case-by-case basis and is to "be determined in light of the totality of the circumstances. Id. For example, if the employer "knows that an equivalent position for which the individual is qualified will become vacant next week[,] . . . the employer should reassign the individual to the position when it becomes available." Id. A period of thirty-seven days has been held to be a "reasonable amount of time." Monette, 90 F.3d at 1176, 1187 (employer acted within parameters of ADA in keeping employee on unpaid leave for thirty-seven days before terminating him when no new position opened).

On the other hand, we and other courts have held that employers are not obligated to retain a disabled employee on unpaid leave indefinitely or for an excessive amount of time. See Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999) (keeping plaintiff on indefinite leave unreasonable accommodation where he had informed employer he "could *not* advise when and under what conditions he could return to any work"); Hoskins v. Oakland County Sheriff's Dept., 227 F.3d 719, 729 (6th Cir. 2000) (unreasonable to require employer to assign employee to new position that became available "well over a year" after employer became aware of disability); Kiphart v. Saturn Corp., 74

F. Supp.2d 769, 782 (M.D. Tenn. 1999) (as a matter of law, the 1,300 days employer sought new position was "well in excess of the reasonable amount of time required by the ADA"); Scheer v. City of Cedar Rapids, 956 F. Supp. 1496, 1501-02 (N.D. Ia. 1997) (request that position be kept open indefinitely until plaintiff had been seizure-free for six months was not reasonable accommodation). In fact, the EEOC's "Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act," suggests that six months is beyond a "reasonable amount of time." 1999 WL 33103142, at *21 (Mar. 1, 1999).

The determination of exactly how long an employer should retain an employee on indefinite or medical leave pending the availability of a position that would accommodate the employee's disability, or how long after termination an employee should continue to be entitled to immediate placement when a position he can fill becomes vacant, must be made on a case-by-case basis. Although VanCom was in contract negotiations with RTD at the time Mr. Boykin was terminated and may have anticipated that the contract would result in new positions becoming available, the contract negotiations did not automatically mean that a new contract would be signed or that the contract would enable VanCom to add new positions. Mr. Boykin does not allege that when he applied for the new position his application was not given proper consideration, only that

he should not have had to compete for the position. In our judgment, VanCom did not violate the ADA by not offering Mr. Boykin the newly created dispatcher position when it became available six months after his termination.

Mr. Boykin also contends VanCom did not enter into the required good-faith interactive process required by the ADA. We need not address this issue. Even if VanCom did not properly engage in the necessary interaction, Mr. Boykin has not shown "that a reasonable accommodation was possible and would have led to a reassignment position." Smith, 180 F.3d 1174.

Finally, Mr. Boykin argues that VanCom violated the ADA when it offered him the bus cleaner position, knowing that he could not accept it due to his school schedule. The ADA forbids discrimination against a qualified individual because of the disability, not "discrimination on other bases." Buckley v. Consol. Edison Co. of N.Y., Inc., 155 F.3d 150, 156 (2d Cir. 1998). The ADA "does not require an employer to make accommodation for an impairment that is not a disability within the meaning of the Act or that does not result from such a disability." Id.; cf. 29 C.F.R. pt. 1630, App. § 1630.9 (obligation of accommodation does not extend to modifications requested primarily for personal benefit of the disabled individual).

We **AFFIRM** the judgment of the district court.