**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VICTORIA ALBERT,

        Plaintiff-Appellant,

v.

SMITH'S FOOD & DRUG CENTERS,
INC.; DALLON CLARKSON; KEVIN
SLOWEY,

        Defendants-Appellees.

No. 02-2052

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-01-266-RLP/LCS)**

 J. Douglas Foster (Kerri L. Peck with him on the briefs), Foster, Johnson,
McDonald, Lucero, Koinis, LLP, Albuquerque, New Mexico, for Plaintiff-
Appellant.

 Edward Ricco (Thomas L. Stahl, Jeffrey L. Lowry, with him on the brief),
Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for
Defendants-Appellees.

Before **BRISCOE**, **McKAY**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Plaintiff Victoria Albert filed this suit against her former employer, Smith's Food & Drug Centers, Inc. ("Smith's"), and individual defendants, Dallon Clarkson, and Kevin Slowey.  Albert alleged that Smith's failed to reasonably accommodate her asthmatic condition, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), and the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-7 (1978) ("NMHRA").  Albert also alleged state law interference with contract claims against Clarkson and Slowey. The district court granted summary judgment in favor of Smith's on the ADA and NMHRA claims and dismissed the state claims against Clarkson and Slowey after concluding they had been fraudulently joined to destroy diversity.  Albert appeals.

This court has jurisdiction under 28 U.S.C. § 1291.  We **reverse** the district court's grant of summary judgment on the ADA claim, and **affirm** the district court's rulings on the NMHRA claim and on Albert's failure to mitigate her damages.  We **remand** with instructions for the district court to **vacate** the order dismissing the claims against Clarkson and Slowey and alter the dismissal of Clarkson and Slowey to dismissal without prejudice.  Finally, we **deny** Albert's requests for certification to the New Mexico Supreme Court.

## II.    BACKGROUND

Since early childhood, Albert's asthma has limited her activities. She has been instructed by her doctors to avoid crowds, cigarette smoke, people wearing perfume, and outdoor activities. She must avoid being active at night, remain indoors during windy conditions, and cannot be in enclosed spaces with cleaning agents. In addition, a large variety of materials can trigger an asthma attack for Albert and such an episode renders her completely unable to function. Albert uses a variety of medications in an attempt to control her symptoms, but she alleges that even with these medications she experiences symptoms most of the time.

Albert worked for Smith's in various positions for approximately fourteen years. Albert became concerned that her asthma was getting worse because of her exposure to numerous aggravating substances as a result of her work as a cashier. As a consequence, she began to seek other jobs in the company that she felt would limit her exposure to triggering substances. Although Albert applied for other positions, other applicants were chosen to fill them.

In August 1999, Albert had a severe asthma attack while at work. Albert took a medical leave of absence until October 14, 1999, when she was authorized by her health care provider to return to work with certain restrictions. Albert gave a note from her health care provider to Slowey, her supervisor, informing

Smith's that she should avoid exposure to certain substances and should avoid cashiering. While on leave of absence, Albert contacted Slowey to ask if any scanner or receiver positions were available.

Upon her return to Smith's, Ms. Albert was assigned to the customer service booth for three weeks. On November 1, 1999, Albert was informed that there were no more hours available for her in the customer service booth. Clarkson, another of Albert's supervisors, informed Albert that if her health care provider would authorize her return to the cashier position, she could have her job back. Albert claims she contacted the health care provider, but the provider would not give Albert that authorization. Albert stopped working in the customer service booth on November 5, 1999. After November 5, 1999, Albert did not apply for any positions in any Smith's store, nor did she contact the Smith's where she had worked. On November 15, Albert filed for unemployment compensation.

On November 18, Albert filed a charge of discrimination against Smith's with the EEOC. On December 17, 1999, Smith's responded to the charge, stating that Albert had been "voluntarily off work" since November 1999. In addition, Smith's stated that Albert had been informed she could be placed in a receiver or scanner position if one opened, but no such position had become available since November. It was later shown that a position had in fact become available on

December 10, 1999, and that other similar positions opened up around the same time. A computer report from Smith's lists Albert's termination date as April 10, 2000.

Albert filed a complaint in state court alleging state law claims against Smith's. While the litigation proceeded, the parties began negotiations in an attempt to settle the case. Smith's offered Albert reinstatement to a position that would accommodate her disabilities. Smith's stated Albert would receive higher pay and the same seniority she had in the previous position. In addition, Albert was free to accept the offer and continue to pursue her lawsuit against the company. Smith's made the offer on July 18, 2001 and it was set to expire on July 24. Albert asked for additional time to consider the offer and Smith's extended the deadline to July 25. Albert did not accept the offer on July 25. During a settlement conference on July 26, Albert stated that she would accept the reinstatement offer, but Smith's refused to reinstate Albert unless she dropped her lawsuit.

While the settlement negotiations proceeded, the parties also filed several motions. In her original complaint, Albert made a claim under NMHRA for discrimination based on her disability. In her second amended complaint, Albert included claims against Clarkson and Slowey. Both Clarkson and Slowey are residents of New Mexico, as is Albert. Smith's removed the action to federal

district court and asserted that Clarkson and Slowey had been fraudulently joined to defeat diversity. Albert filed a motion to remand the matter to state court. The district court denied the motion and dismissed Clarkson and Slowey from the suit.

Smith's then filed a motion for summary judgment on the NMHRA claim. Smith's also moved for summary judgment on Albert's state claims for front pay and back pay arguing Albert had failed to mitigate her damages. Before the district court ruled on the motion, Albert filed a third amended complaint adding claims under the ADA. The district court then granted summary judgment on the NMHRA claim and concluded that Albert had failed to mitigate her damages by failing to accept an offer of reinstatement. Smith's filed a motion for summary judgment on the ADA claim, the district court granted it, and Albert filed this appeal.

## III. DISCUSSION

### A. The claims against Clarkson and Slowey

Albert argues the district court erred when it dismissed the claims against Clarkson and Slowey. Albert's argument raises two issues. First, because the district court's analysis of the claims against Clarkson and Slowey was in the context of Albert's motion to remand the case to state court, Albert's argument is necessarily an attack on the district court's fraudulent joinder analysis. As discussed below, this court need not address whether the district court's denial of

the motion to remand was proper because an alternative basis for federal jurisdiction existed at the time the district court rendered judgment. Second, Albert's arguments also attack the district court's decision to dismiss her claims against Clarkson and Slowey on the merits. Because the district court's dismissal of these claims took place in the context of a fraudulent joinder analysis, a jurisdictional inquiry, we conclude that the district court should not have dismissed the claims with prejudice.

### 1. Denial of the motion to remand

"This court has jurisdiction over a denial of a motion to remand to state court when coupled with the appeal of a final judgment." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076 (10th Cir. 1999)(quotation omitted). Albert argues that the district court's fraudulent joinder analysis is flawed because the court failed to resolve whether she could state a claim for interference with prospective contractual relations between herself and Smith's. Even assuming that Albert is correct, however, this court will not reverse the district court's denial of the motion to remand. Indeed, a remand to a state court would be improper because the district court thereafter had federal question jurisdiction by virtue of the ADA claim.

In *Caterpillar Inc. v. Lewis*, the Supreme Court discussed the impact of jurisdictional defects at the time of removal on the subject matter jurisdiction of

the trial court. 519 U.S. 61, 64 (1996). In that case, although the suit was removed on the basis of diversity jurisdiction, at the time of removal there was not complete diversity among the parties. *Id.* at 67. By the time final judgment was rendered, however, the jurisdictional defect had been cured. *Id.* The Supreme Court held that remanding the case to state court after final judgment would "impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." *Id.* at 77.

Were this court to conclude that the district court's decision on the merits of Albert's claims should be affirmed, the holding in *Caterpillar* would obviate the need to address any attack on the denial of the motion to remand. As discussed below, however, we have concluded that the district court's ruling on Albert's ADA claim must be reversed. Thus, further consideration of the order denying remand is required. In *Huffman v. Saul Holdings Ltd. Partnership* this court remanded a case to state court after reversing the district court's ruling on the merits, despite the cure of an earlier jurisdictional defect. 194 F.3d at 1084. We noted that the judicial efficiency rationale of *Caterpillar* does not apply when the district court is reversed on the merits. *Id.* at 1080. After reversal, no judgment on the merits remains and "there is no reason to refrain from ordering a remand to state court" on the basis of a defect in removal procedure. *Id.*

-8-

The district court in *Huffman*, however, had jurisdiction based only on diversity. Thus, any proceedings after reversal were limited to questions of state law, whether in federal or state court. The situation here is quite different. After the district court denied Albert's motion to remand, she chose to amend her complaint to add a claim under the ADA, giving the district court federal question jurisdiction.

The posture of this case is similar to that in *Akin v. General Electric Co.*, 156 F.3d 1030 (10th Cir. 1998). The plaintiffs in *Akin* filed a motion to remand, arguing some of the defendants could not have properly consented to removal. *Id.* at 1036. The district court denied the plaintiffs' motion to remand. *Id.* The plaintiffs then added federal claims against those defendants, thus giving the district court jurisdiction. *Id.* The plaintiffs challenged the denial of the motion to remand on appeal. *Id.* This court held that "once plaintiff decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there." *Id.* (quotation omitted).

The rationale of *Akin* applies with equal force to this case. As the plaintiffs did in *Akin*, Albert affirmatively utilized the federal forum for her own purposes after the district court denied her motion to remand. Indeed, it is Albert's ADA claim which merits reversal of the district court's decision. Unlike *Huffman*, the claims remaining after appeal in this case are not state law claims. The efficiency

concerns of *Caterpillar*, therefore, are implicated in this case despite this court's conclusion that the district court should be reversed because Albert's ADA claim destines this case to remain in federal court.

We recognize that at least two circuits have held that the amendment of a complaint to add federal question claims did not doom a challenge to the denial of a motion to remand. *See King v. Marriott Int'l Inc.*, 337 F.3d 421, 426 (4th Cir. 2003); *Waste Control Specialists, LLC, v. Envirocare of Tx, Inc.,* 199 F.3d 781, 787 (5th Cir. 2000). Two concerns were central to these decisions. First, the finality and efficiency concerns of *Caterpillar* were not present in either case. *See King*, 337 F.3d at 426; *Waste Control Specialists*, 199 F.3d at 787. Second, in each case the amendment of the complaint was narrow adding the "one and only claim the district court suggested [the plaintiff] had." *Waste Control Specialists*, 199 F.3d at 787 n.5*; King*, 337 F.3d at 426 (noting that the amendment made by the plaintiff simply made explicit the federal claim which the district court held was implied in the complaint).

Those circumstances are not present in this case. Because Albert amended her complaint to include the ADA claim, the efficiency concerns of *Caterpillar* are indeed present here. Furthermore, the district court's decision did not imply that Albert's only viable claim was the federal ADA claim. Indeed, the court's denial of the motion to remand left intact Albert's claims under the New Mexico

Human Rights Act and Albert amended her complaint to add claims wholly different from those eliminated by denial of the motion to remand. Therefore, as we did in *Akin*, we hold that under the circumstances of this case, Albert "cannot voluntarily invoke, and then disavow, federal jurisdiction." *Akin*, 156 F.3d at 1036; *Cf. Waste Control Specialists*, 199 F.3d at 787 n. 5 (discussing the difference between the narrow amendment in that case and a "studied decision to take advantage of the forum" in another case). Accordingly, Albert cannot challenge the district court's decision to deny her motion to remand by attacking the district court's fraudulent joinder analysis.

## 2. Dismissal with prejudice

The district court denied the motion to remand and dismissed Clarkson and Slowey from the suit without further comment.[1] Because the district court's conclusion was reached in the context of the denial of the motion to remand, we conclude the district court should have dismissed the claims without prejudice to Albert's refiling the claims before another court.[2]

On the motion for remand, the district court was confronted with a question of subject matter jurisdiction because it could only retain jurisdiction if the claims

---

[1] Because Albert's interference with contract claims were alleged only against Clarkson and Slowey, their dismissal was necessarily the dismissal of the contract claims.

[2] We note that in amending her complaint to add the federal claims, Albert did not attempt to reassert the claims against Clarkson and Slowey.

-11-

against Clarkson and Slowey were dismissed. *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 83 (10th Cir. 1964). Once it determined that Clarkson and Slowey were fraudulently joined, the district court had no jurisdiction to resolve the merits of the claims against them. In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice.[3] *See Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973). Similarly, we hold that the dismissal of the claims against Clarkson and Slowey should have been without prejudice to refiling before another court.

Because it is not necessary to determine if Albert could have stated a claim for interference of contract we deny Albert's request to certify to the New Mexico Supreme Court the question of whether New Mexico law recognizes a cause of action by an at-will employee for interference with prospective contractual relations.

_____

[3] We recognize that in the past we have allowed a district court to grant a Rule 12(b)(6) motion regarding fraudulently joined defendants at the same time it denies a motion to remand. *See e.g., Dodd*, 378 F.2d at 882. The cases that do so were decided prior to *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) and do not articulate the jurisdictional basis for the court's action. Moreover, these cases did not involve situations where an alternative basis of jurisdiction later came into play. Accordingly, those decisions do not affect the analysis in this case.

**B.     Whether the district court erred in granting summary judgment on Albert's ADA Claim**

This court reviews the district court's grant of summary judgment *de novo*. *Smith v. Midland Brake*, *Inc.*, 180 F.3d 1154, 1159 (10th Cir. 1999)(en banc). Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence in a light most favorable to the non-moving party. *Midland Brake*, 180 F.3d at 1160.

To establish her claim under the ADA, Albert must show: (1) she is a disabled person within the meaning of the ADA; (2) she is able to perform the essential job functions with or without reasonable accommodation; and (3) Smith's discriminated against her because of her disability. *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir. 1997). The district court concluded that Albert is not disabled.

The relevant language of the ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ." 42 U.S.C. § 12102(2). Smith's concedes that breathing is a major life activity.[4]

---

[4] Because we conclude that there is a genuine issue of material fact concerning whether Albert is disabled because her ability to breathe is substantially limited we need not address Albert's alternative argument that she is disabled because her ability to work is substantially limited.

When inquiring whether Albert's asthma substantially limits her ability to breathe, we must examine the extent of the limitation caused by her impairment in terms of her own experience.[5] *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002). The relevant regulations state:

> (1) The term substantially limits means: (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
> (2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j).

---

[5] The district court relied on *Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002), to conclude that "the central inquiry must be whether the plaintiff is unable to perform the variety of tasks required to be performed in most people's daily lives and not whether a plaintiff is unable to perform on-the-job duties." The district court concluded that Albert had presented insufficient evidence to avoid summary judgment on whether her asthma substantially limits a major life activity.

The Court in *Toyota* did not set down the rule that all people claiming a disability must show an inability to perform the variety of tasks required to be performed in most people's daily lives. *See Toyota*, 534 U.S. at 198. It is clear from the opinion in *Toyota* that the Supreme Court was concerned only with what substantially limited meant in terms of the performance of manual tasks which was the major life activity affected by the plaintiff's disability in that case. *Id.* at 197-98. The Supreme Court's analysis regarding the impact of the disability relevant in that case on the ability to perform basic tasks does not apply to what is required to show a substantial limitation in the major life activity of breathing.

Smith's does not contest that Albert has a physical impairment, asthma, but argues that Albert has failed to raise a genuine question of material fact about whether her asthma substantially limits her breathing. An examination of the evidence in relation to the above factors, however, suggests otherwise.

As noted above, Albert's asthma requires her to avoid a wide variety of everyday situations. She must avoid crowds, night-time or outdoor activities, cigarette smoke, and perfumes. Her asthma is activated by an array of common substances including pollen, mold, dust, cat dander, dog hair, strong- smelling paint, aftershave, certain kinds of foods, cleaning agents, and chemicals. Her asthma can also be activated by such things as exposure to cold air or stress. Moreover, her asthma is not completely controlled by her daily use of multiple medications. This evidence suggests that the condition and manner under which Albert is able to breathe freely may be significantly restricted.

The testimony of Albert's health care providers supports the contention that her asthma substantially limits her ability to breathe. Albert's nurse practitioner, Trisch Van Sciver, testified that Albert's asthma is difficult to control and that Albert is symptomatic most of the time. Van Sciver also testified that even when not having an episode Albert experiences chest tightness, wheezing, cough, and shortness of breath. In addition, Van Sciver noted Albert's asthma is not curable.

Smith's argues that Albert has relied only on generalized evidence and her diagnosis of severe persistent asthma to support her claim of disability. Smith's relies on Albert's deposition testimony to argue that Albert suffered asthma attacks only when exposed to a wide variety of allergens all at once. Smith's also argues that Albert's asthma substantially limits her breathing only when she is having an attack. The evidence cited above, however, demonstrates Smith's view of the evidence is in dispute. Nothing more is required for the issue to survive summary judgment.

Relying on *Pack v. KMart Corp.*, Smith's argues that Albert was required to present evidence comparing her ability to breathe to that of the general public. 166 F.3d 1300, 1306, n.7 (10th Cir. 1999). Assuming *Pack* stated a requirement which applies to this case,[6] Albert has presented sufficient evidence that her condition differentiates her from the general populace. The affidavit of Dr. James Poliner noted both that Albert has severe, persistent asthma and that she was probably susceptible to many common trigger substances. He then noted that asthmatics can have difficulty breathing after exposure to everyday substances that do not affect "most people." Van Sciver confirmed that Albert suffers from

---

[6] The situation in *Pack* is arguably much different from the case at hand. In *Pack*, the plaintiff claimed that his ability to sleep was substantially impaired and we noted that evidence regarding the ability to sleep of the average person in the general population would have aided the trier of fact because "there was a dearth of other evidence." *Pack v. KMart Corp.*, 166 F.3d 1300, 1306, n.7 (10th Cir. 1999). In Albert's case there was a significant amount of "other evidence."

the most serious form of asthma, a condition that by definition could not be shared by the general populace. While we recognize that "[i]t is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis," Albert's diagnosis does indicate that her ability to breathe is different from that of an average individual. *See Toyota*, 534 U.S. at 198.

The evidence concerning Albert's reactions to common substances, the limitations on her activities, her multiple hospitalizations, and her frequent trips to the emergency room all support Albert's contention that she doesn't "breathe as well as [other people]" Viewing the evidence in a light most favorable to Albert, we conclude that summary judgment for Smith's was inappropriate on the question of whether Albert was disabled because Albert has raised a genuine issue of material fact as to whether her asthma substantially limits her breathing and thus a major life activity.

## C. Reasonable accommodation

Smith's argues that even if Albert is disabled, Albert cannot demonstrate that Smith's failed to reasonably accommodate her. In *Midland Brake*, this court discussed the scope of an employer's duty to reasonably accommodate a disabled employee under the ADA. 180 F.3d at 1159. This court concluded that an employer must take reasonable steps to reassign a qualified individual to a vacant position or a position the employer reasonably anticipates will become vacant in

the fairly immediate future. *Id*. at 1171, 1175. We noted that the employer and employee must engage in an interactive process to determine what position would be appropriate. *Id*. at 1171. We outlined the interactive process as follows:

> In general, the interactive process must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations, and expressing a desire for reassignment if no reasonable accommodation is possible in the employee's existing job. . . .
> Once the employer's responsibilities within the interactive process are triggered by appropriate notice by the employee, both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available. . . .
> The interactive process includes good-faith communications between the employer and employee.

*Id*. at 1172 (footnote omitted).

The parties appear to agree that Albert provided sufficient notice to Smith's at least by October 14, 1999, when she gave her supervisor the note from her health care provider restricting her work activities. The parties disagree, however, over whether Smith's took any action through an interactive process to identify appropriate alternative jobs.

Albert argues that Smith's cut off the interactive process by informing Albert there were "no more hours" available for her on November 1, 1999. Smith's argues Albert's supervisor was requesting more information about

Albert's workplace limitations on November 1, 1999 when he requested her health care provider sign off on her return to work as a cashier.

Albert's status after November 5 is not clear from the evidence in the record. After ceasing to work at Smith's on November 5, Albert applied for unemployment compensation on November 15, and filed an EEOC charge on November 18. These actions support the contention that Albert understood the interactive process to have been terminated. Smith's, on the other hand, stated in its December 17, 1999 response to the EEOC charge that Albert had been "voluntarily off work" since November. In that response, Smith's also stated that Albert had been informed she could have another position when and if one became available. Additionally, Smith's produced a document in discovery listing Albert's termination date as April 14, 2000.

Smith's contends that because it could not have known of the December 10 position when Albert requested reassignment, it had no duty to inform Albert of any position that opened after her last day of work on November 5. Smith's argues that an employer's duty to identify vacant positions arises when the employee requests reassignment and ends after the employer determines that no positions are available or will become available in the fairly immediate future. That proposition, standing alone, is correct. *See Midland Brake*, 180 F.3d at

1175.  That proposition, however, fails to provide instruction in this case, because a dispute concerning the status of the interactive process exists.

Neither party may create or destroy liability by causing a breakdown of the interactive process.  *Davoll v. Webb*, 194 F.3d 1116, 1133 (10th Cir. 1999).  After October 14, when Albert triggered the interactive process by delivering the note from her health care provider, Smith's had a duty to work with Albert to identify the type of position that would reasonably accommodate her limitations.  *Midland Brake*, 180 F.3d at 1172.

We do not mean to suggest that an employer may not terminate a disabled employee after concluding that it cannot reasonably accommodate the individual. Smith's argues, however, that it had not reached that conclusion on November 5. Instead, Smith's states that it sought to continue the process of defining what positions would reasonably accommodate Albert's disabilities.  Thus, had the process continued, as Smith's apparently hoped it would, one may presume that the parties would have continued to seek a suitable position for Albert.

In *Boykin v. ATC/VanCom of Colorado, L.P.*, this court held that:

> [t]he determination of exactley how long an employer should retain an employee on indefinite or medical leave pending the availability of a position that would accommodate the employee's disability, or how long after termination an employee should be entitled to immediate placement when a position he can fill becomes vacant, must be made on a case-by-case basis.

247 F.3d 1061, 1065 (10th Cir. 2001). That case specific determination relies on an examination of the factual background of the interactive process. *See id.* As outlined above, the material facts of the interactive process remain in dispute in this case. Accordingly, Albert has raised a genuine issue of material fact concerning whether Smith's failed to reasonably accommodate her.

**D.     Failure to mitigate**

Under *Ford Motor Co. v. EEOC*, a plaintiff's unreasonable rejection of an unconditional offer of reinstatement will cut off an employer's liability for damages as of the date the offer is rejected or expires. 458 U.S. 219, 230-32 (1982). In *Giandonato v. Sybron Corp.*, this court concluded the reasonableness of the rejection must be examined in light of the circumstances surrounding the offer and refusal. 804 F.2d 120, 124 (10th Cir. 1986). We noted that an offer rejected solely for personal reasons will not avoid the rule set down in *Ford*. *Id*.

Albert argues the district court erred by concluding that she had failed to mitigate her damages. She asserts that she attempted to accept Smith's unconditional offer only one day after it expired, the offer was not made in good faith, Smith's failed to make the offer promptly, and the offer was not open for a reasonable amount of time. Albert's attempted acceptance of the offer one day after it expired is irrelevant because under the usual principles of contract law Albert's failure to accept the offer before it expired ended her power to accept.

-21-

Restatement (Second) of Contracts § 41(1) (1979). It is unimportant that Albert

attempted to accept only one day after the offer had expired, as Smith's was under

no obligation to extend the period that the offer was open to Albert.

Albert offers no support for her contention that the offer was not made in

good faith. Albert's suggestion that the offer was a mere "litigation tactic" is

unavailing; the employer's motivation to avoid further damages does not alter the

unconditional nature of the offer that was made.

Albert's argument that the timing of the offer somehow affected its validity

is likewise unconvincing. Albert insists that *Ford* required Smith's to make a

prompt offer and because the offer was made in July 2001, long after she filed her

November 1999 EEOC charge, it was not prompt. Albert cites *Xiao-Yue Gu v.

Hughes STX Corp.*, 127 F. Supp. 2d 751, 756 (D. Md. 2001) and *Eichler v.

Riddell, Inc.*, 961 F. Supp. 211, 213 (N.D. Ill. 1997) for support. These district

court cases are readily distinguishable, however, because the offers of

reinstatement in these cases were made after a determination on the merits. *See

Xian-Yue Gu*, 127 F. Supp. 2d at 756; *Eichler*, 961 F. Supp. at 213. Further, the

Court in *Ford* did not impose a requirement that the offer be prompt. *Ford*, 458

U.S. at 228, 230. In any event, the timing of the offer in *Ford* was not a great

deal different from the timing of the offer in this case. In *Ford*, the employer

made the offer some two years after the plaintiff was refused a position and in

-22-

this case Albert was offered the position twenty-one months after she ceased working at Smith's. *Id.* at 222.

Albert also argues that her failure to accept the offer was reasonable in light of the short time period the offer was open. Albert argues the reasonableness of her rejection is a factual question that should be resolved by a jury.

Smith's gave Albert seven days to evaluate whether she would accept an unconditional offer of assignment to a position she had previously sought. The offer by Smith's also would have allowed Albert to retain her seniority, receive a higher rate of pay than she had received prior to leaving Smith's, and yet proceed with the litigation. Albert does not contest these facts other than to make the bald assertion that seven days was not a reasonable amount of time. She offers no reason why seven days was insufficient for the consideration of a position she was familiar with, nor does she express any difficulties with the terms of the offer. Albert does not identify any downside to the offer other than the limitation of further front pay, the very limitation Smith's seeks to impose for Albert's failure to mitigate. Thus, there are no facts in dispute for a jury to resolve. For the reasons outlined above, the district court did not err in granting summary judgment on Albert's failure to mitigate. On remand, if it is determined that

Smith's is liable for damages, those damages cease as of the date the offer expired, July 25, 2001.

**E.    Reassignment under NMHRA**

The NMHRA prohibits employers from refusing to reasonably accommodate an individual's disability. N.M. Stat. Ann. § 28-1-7(J) (2000). The statute does not define what constitutes a "reasonable accommodation." The New Mexico Human Rights Commission regulations, however, define reasonable accommodation as "such modifications or adaptations of the work environment or job responsibilities of a handicapped person as are necessary to enable him or her to perform the essential functions of the *job in question* . . . ." 9 N.M. Admin. Code tit. 1.1.7. The New Mexico state courts have yet to decide the question of whether reasonable accommodation under the NMHRA requires reassignment. In the absence of any controlling interpretation from the state courts, we must attempt to predict how the New Mexico Supreme Court would rule on the issue.[7] *See Fields v. Farmers Ins. Co.*, 18 F.3d 831, 834 (10th Cir. 1994).

_____

[7] We deny Albert's motion to certify this question to the New Mexico Supreme Court. Certification of state law questions to the state supreme court is discretionary. *Massengale v. Ok. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994). In light of the reversal on the ADA claim, certification would only delay litigation. The question presented is not an unusually difficult one and we exercise discretion to resolve it.

Albert argues that the district court erred by holding that the NMHRA does not require reassignment as a reasonable accommodation. Albert contends that we should look to decisions interpreting the ADA to conclude that the NMHRA does require reassignment.[8] The New Mexico Supreme Court, however, has cautioned against just such an application of federal decisions in interpreting the state human rights act:

> In interpreting our State Human Rights Act, we have previously indicated that it is appropriate to rely upon federal civil rights adjudication for guidance in analyzing a claim under the Act, with the following reservation: Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own. Our analysis of this claim is based on New Mexico statute and our interpretation of our legislature's intent . . . we are not binding New Mexico law to interpretations made by the federal courts of the federal statute.

*Gonzalez v. N. M. Dep't of Health*, 11 P.3d 550, 557 (N.M. 2000). To resolve the issue at hand we must interpret New Mexico's statute, not apply a methodology for dealing with the resolution of a claim. Were we to simply apply the rationale

---

[8] Albert also argues that the district court improperly refused to consider the affidavit of Patrick Simpson, counsel for the New Mexico Human Rights Commission which enforces the relevant regulations. The district court rejected the affidavit as irrelevant because it only pertained to Mr. Simpson's personal opinion. Albert contends that Mr. Simpson's affidavit gives factual support to the notion that the Human Rights Commission would rely on federal law because he stated that they had in the past. Even assuming that Albert is correct concerning the relevance of Mr. Simpson's affidavit, it would not alter our conclusion. Accepting the proposition that the federal law can provide some guidance does nothing to answer the specific statutory interpretation question posed in this case.

of this court in requiring reassignment under the ADA without an examination of New Mexico's statute we would gloss over important differences. In doing so, we would commit precisely the kind of error the New Mexico Supreme Court took pains to forestall.

Examining the NMHRA reveals that the language of the statute differs significantly from the language of the ADA. In *Midland Brake*, this court relied heavily on the ADA's statutory definitions of "reasonable accommodation" and "qualified individual" to conclude that reassignment could be required. *Midland Brake*, 180 F.3d at 1161. Indeed, the ADA's definition of reasonable accommodation explicitly includes reassignment to a vacant position. *Id*. The NMHRA does not contain any analogous language.

While Albert points out that the Act was intended to eliminate unlawful discriminatory practice, nothing in that broad purpose requires that reasonable accommodation be read to include reassignment. Albert also argues that "job in question" should be read to include whatever job is at issue, either the previously held position or the position the employee seeks as an accommodation. We decline to adopt that reading. The reference in the regulations to the "job responsibilities of a handicapped person," can reasonably be read to limit the consideration to an existing job. Moreover, the state regulations were drafted

some eight years after the ADA was enacted, but New Mexico did not adopt the language used in the ADA to define reasonable accommodation.

In *Midland Brake*, we recognized the burden imposed by requiring reassignment, but held that the language of the statute required the imposition of that burden. *Id*. at 1164, 1167. We decline to impose that burden under the NMHRA in the absence of any statutory language or evidence of legislative intent supporting such a reading. Accordingly, we conclude that the New Mexico Supreme Court would not read the NMHRA to require reassignment. Because Albert has acknowledged that she could not reasonably be accommodated in her former job and we conclude that reassignment is not required under the NMHRA, summary judgment on the NMHRA claim was appropriate.

## IV. CONCLUSION

For the foregoing reasons, this court **reverses** the district court's grant of summary judgment on Albert's ADA claim, **affirms** the district court's grant of summary judgment regarding the New Mexico Human Rights Act claim and Albert's failure to mitigate, and **denies** Albert's requests for certification of issues to the New Mexico Supreme Court. We **remand** with instructions for the district court to **vacate** the order dismissing the claims against Clarkson and Slowey and alter the dismissal of Clarkson and Slowey to dismissal without prejudice to refiling before another court.