# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 8, 2013

No. 12-20034

Lyle W. Cayce
Clerk

TINA MILTON,

Plaintiff - Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, PRADO, and HIGGINSON, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Tina Milton, a former Texas Department of Criminal Justice ("TDCJ") employee, who is allergic to scented products used in her workplace, appeals the district court's summary judgment for TDCJ on her Americans with Disabilities Act ("ADA") and Family and Medical Leave Act ("FMLA") claims.[1]  For the following reasons, we AFFIRM the judgment of the district court.

---

[1] Milton also argues that the district court abused its discretion in restricting discovery in this case.  Although the district judge's management of the case was unusual, additional discovery would not have raised facts that would have made summary judgment unwarranted.  As such, any abuse of discretion in the management of discovery was harmless.

No. 12-20034

I.

Tina Milton was a clerical employee with TDCJ for quite a while: from November 1990 until April 19, 2007. She was employed at the Wynne Unit in Huntsville, Texas, where she was responsible for looking for coded gang messages in inmate mail. She was terminated, administratively, in April 2007 after failing to provide medical documentation verifying her FMLA leave.

Milton's reaction to the use of scented candles and wall plug-ins around her work area is the basis of her ADA claim and of this current litigation. She generally suffers from numerous respiratory issues, including asthma, allergies, and a severe sensitivity to perfumed or scented products. Exposure to scented candles, wall plug-ins, and room deodorizers causes her asthma, headaches, nausea, chest tightness, coughing, rhinitis, and sinusitis. She mitigates these side effects by self-segregating in public and social settings in an attempt to avoid exposure to scented products. Her sensitivity, however, usually did not preclude her from doing her job. On the other side of the ledger is the reason for scented products at the Wynne Unit: it is located in a century old building and the dust and musty smells are overwhelming to the large majority of its employees.

Milton first called to the attention of TDCJ her problem with the use of scented products in the workplace in 2006, following her return to work from sinus surgery. She addressed the issue informally with her TDCJ supervisors, asking that the scented products be removed. Milton was contacted by an assistant warden, and she asked the assistant warden whether he could remove the plug-ins and candles because of her allergies, asthma, and breathing problems.

The informal process, however, did not resolve the situation. So, Milton filed a formal request for ADA accommodation in December 2006. Her requested accommodation simply stated, "No plug in or candles. Strong [odors]." TDCJ's

2

No. 12-20034

ADA coordinator, Tracy Bailey, denied the request.  Bailey viewed Milton as being allergic to everything airborne–not just the scented candles and plug-ins used in Milton's current workspace.  After denying the initial accommodation request, Bailey allowed Milton 90 days to find another available TDCJ position that could accommodate her respiratory sensitivity.  Milton brought other positions that were available to Bailey's attention, such as in inmate records, but Bailey determined that they equally were unsuitable due to the presence of dust.  Because no suitable alternative was found, TDCJ closed Milton's ADA file in March 2007.

The adverse impact on Milton's health reached its peak when she took FMLA leave, effective January 3, 2007.  Milton stated that her body was worn down, she was sick, in pain, her face was swollen, and her blood pressure was elevated.  A condition of Milton's leave, however, was that she submit medical certification of her continued illness, as provided by the FMLA.  Milton provided this certification in January 2007, and continued to do so until March 2007.  TDCJ never received Milton's March 2007 certification.  TDCJ has no record of receiving a fax from the medical provider, and the phone records do not show that the medical provider sent a fax to TDCJ.  Milton was not informed of the missing March certification until April 19, after she had been administratively terminated.  It seems that no one questions that TDCJ never received the March certification, for whatever reason.

## II.

We review the district court's decision granting summary judgment *de novo*, applying the same standards as the trial court.  *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011).  "Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Id.*  Evidence is construed "in the light most favorable to the non-moving party . . . draw[ing]

No. 12-20034

all reasonable inferences in that party's favor." *Id.* "[C]onclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" are insufficient to create a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). Summary judgment can be affirmed "on any grounds supported by the record," even if we do "not agree with the reasons given by the district court to support summary judgment." *Lifecare Hosp., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

### III.

Under the ADA, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A qualified individual is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8). Moreover, disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities [of such individual]; (B) a record of such an impairment; or (C) being regarded as having such an impairment." § 12102(1). Thus, in order to make out a prima facie case, Milton must show: "(1) [she] suffers from a disability; (2) [she] is qualified for the job; (3) [she] was subject to an adverse employment action; and (4) [she] was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

"Merely having an 'impairment' does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002).[2]

---

[2] Although *Williams* was overruled by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), we held in *Agro Distribution* that the "changes do not apply retroactively." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009). The

Rather, the impairment must substantially limit the individual. *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir. 2009). "'Substantially limits' means a person is '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii) (2008)). In *Agro Distribution*, we restated that "whether an impairment is substantially limiting 'is determined in light of (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or expected permanent or long-term impact.'" *Id.* at 470 (quoting *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995)). Furthermore, this is "an individualized assessment that considers the effects of any mitigating measures taken by the individual." *Id.*; *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) ("A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken.").

Relying on an individualized assessment of the facts of Milton's case and our prior precedent on substantial limitations, we hold that Milton has failed to demonstrate a genuine issue of material fact as to whether she suffers from a disability. Although there is ample evidence that Milton's condition affects her life activities, we generally have not recognized disabilities based on conditions that the individual can effectively mitigate. *See, e.g., Agro Distribution*, 555 F.3d at 470-71; *Hamilton v. S.W. Bell Tel. Co.*, 136 F.3d 1047, 1050-51 (5th Cir. 1998) (finding no disability because of the temporary nature of the post-traumatic stress disorder and its impact on the appellant's ability to work); *see also Muller*

---

events giving rise to Milton's case all took place before the enactment of 2008 Amendments, and as such, the amendments do not apply.

*v. Costello*, 187 F.3d 298, 314 (2d Cir. 1999) (finding no disability because appellant did not suffer enough difficulty breathing when off the job to find that his condition substantially limited a major life activity). Moreover, there are significant differences between Milton's condition and the arguably analogous case of *Albert v. Smith's Food & Drug Centers, Inc.*, where the Tenth Circuit concluded that the individual had raised a genuine issue of material fact as to whether she did suffer from a disability. 356 F.3d 1242, 1245 (10th Cir. 2004). In *Albert*, "a large variety of materials [could] trigger an asthma attack . . . and such an episode render[ed] her completely unable to function." *Id.* Unlike Milton, however, the individual in *Albert* was prescribed medication, which still did not fully control her breathing problems, and she was "symptomatic most of the time." *Id.* at 1251. In addition, the individual made "frequent trips to the emergency room" and had been hospitalized multiple times. *Id.* By contrast, Milton was able to mitigate her symptoms and was not consistently restricted in her ability to breathe. Milton's sensitivity to perfumed odors certainly caused her discomfort and inconvenience, but this condition was narrowly restricted in time and place and could be avoided in the larger context outside of the particular workplace at a particular employer. In any event, her disability could not, in totality, be called severe and in no case was nearly as severe as that suffered by the individual in *Albert*; it simply did not rise to the level of a substantial impairment of the major life activity—that is, the ability to engage in productive and compensable work for which she was qualified by virtue of her experience and training. Thus the district court properly concluded, under the pre-ADA Amendments law that we apply in this case, that Milton did not raise a genuine issue of material fact as to whether she was a qualified individual with a disability within the meaning of the ADA.

No. 12-20034

IV.

We now turn to her FMLA claim. Under the FMLA, "[a]n eligible employee of a covered employer has the right to take unpaid leave for a period of up to 12 workweeks in any 12-month period when the employee has 'a serious health condition that makes [him or her] unable to perform the function of [his or her] position.'" *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998) (quoting 29 U.S.C. § 2612(a)(1)(D)). Moreover, "[f]ollowing a qualified leave period, the employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms." *Id.* Employers, however, can require medical certification for FMLA leave. *See* 29 C.F.R. § 825.305(b) ("The employee must provide the requested certification . . . within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts."). "A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification," and the regulations do not require employers to advise employees of missing certifications. *Id.* § 825.305(c). If the employee fails to provide certification, "the employer may deny the taking of FMLA leave." *Id.* § 825.305(d).

Thus, the only issue the district court needed to consider was whether Milton submitted the required medical certification before April 12, 2007. There is no genuine dispute that the certification was not timely received. Although Milton argues that TDCJ never informed her that she could be discharged for failing to provide the medical certification, the request for leave states, "Your failure to submit proper documentation as required by policy may be cause for disciplinary action *or separation* from employment." (Emphasis added.) The district court thus properly granted summary judgment for TDCJ on the FMLA claim.

No. 12-20034

## V.

We hold that Milton did not suffer from a disability within the meaning and coverage of the ADA. Furthermore, there is no dispute that TDCJ did not receive Milton's FMLA certification before the deadline. The district court's judgment is therefore

AFFIRMED.