# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 8, 2005              Decided March 31, 2006

No. 04-7018

NEAL F. GASSER,
APPELLEE/CROSS-APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLANT/CROSS-APPELLEE

———

Consolidated with
04-7024

———

Appeals from the United States District Court
for the District of Columbia
(No. 00cv00534)

———

*Donna M. Murasky*, Senior Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the cause for appellant/cross-appellee. With her on the briefs were *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General.

*Gregg D. Adler* argued the cause for appellee/cross-appellant. On the briefs was *Michael P. Deeds*. *James L. Kestell* entered an appearance.

Before:   GINSBURG, *Chief Judge*, RANDOLPH, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*:   The District of Columbia appeals from the judgment entered after a verdict in favor of Neal F. Gasser, a sergeant in the D.C. Metropolitan Police Department, finding the District liable to him under the Americans with Disabilities Act of 1990 ("Disabilities Act"), 42 U.S.C. §§ 12101-12213.  Gasser cross-appeals from the district court's order refusing to direct the Police Department to promote him to Lieutenant.  Among the matters in controversy is the proper application of the evidentiary standard laid down in *Duncan v. Washington Metropolitan Area Transit Authority*, 240 F.3d 1110 (D.C. Cir. 2001) (en banc).

I.

Gasser's complaint alleged that the Police Department violated the Disabilities Act when it refused to return him to full duty.  *See Gasser v. Ramsey*, 125 F. Supp. 2d 1, 1-2 (D.D.C. 2000).  After a jury failed to reach a verdict,  the case was set for retrial.   The district court denied the District's motions for judgment as a matter of law after Gasser presented his case-in-chief and after the close of all the evidence.  The jury returned a special verdict in Gasser's favor and awarded him $34,096 for emotional distress.

The evidence, viewed most favorably to Gasser, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000), showed as follows.  Gasser joined the Police Department as a patrol officer in 1986 and was promoted to master patrol

officer in 1991 and to sergeant in 1994.[1] Police Department policy requires that all officers be "street ready" or "fit for full duty" regardless of rank. This means that all officers – including the Chief of Police – must be able to perform patrol functions from time to time. Each officer is expected to be able to subdue a suspect within a matter of minutes, with or without assistance.

In July 1996, Gasser suffered a mesenteric vein thrombosis – a blood clot in his abdomen. Though Gasser twice previously had been treated for discrete clots in his legs, this time doctors diagnosed a protein S deficiency. Protein S deficiency is an inherited disorder that tends to cause blood to clot. Doctors treat protein S deficiency with anticoagulants – blood thinners – of which Coumadin is the most commonly prescribed. Gasser's hematologist, Dr. Harold S. Mirsky,[2] prescribed Coumadin in 1996 to treat Gasser's blood disorder, and Coumadin has been part of Gasser's regimen ever since.

Gasser went on limited duty for six months after he began taking Coumadin. Limited duty is a temporary status, intended to provide sick or injured officers an opportunity to recover completely while preparing to return to full duty. An officer cannot be promoted or earn overtime on limited duty. The District's Police and Fire Clinic provides care for, and makes

---

[1] A patrol officer is a first-responder, handling the day-to-day activities on the street as calls come in on the radio. A master patrol officer has the same responsibilities, but also takes on supervisory responsibilities if a sergeant is not on the scene. A sergeant's responsibilities are more supervisory, with less involvement in day-to-day activities on the street. Gasser, for example, made only three or four arrests each year as a sergeant.

[2] Dr. Mirsky is a board-certified hematologist with more than thirty-nine years of experience treating patients with blood disorders.

decisions concerning the duty status of, sick or injured officers. Because limited duty is not a full-time status, once the doctors at the Clinic provide all the medical care they can, a patient still unable to fulfill the obligations of his rank is involuntarily retired – a process involving multiple levels of recommendation and review. At all times relevant to this case, Dr. Michelle Smith-Jeffries was the Clinic physician who decided when officers should be placed on limited duty.

By the end of 1996, Clinic physicians agreed to return Gasser to full-duty status upon receiving a letter from Dr. Mirsky urging them to do so.[3] Clinic physicians knew Gasser continued to take Coumadin after returning to full duty. He performed at full duty without incident for a number of years. But when he sprained his wrist in an off-duty car accident in December 1998, he again reported to the Clinic.

At the Clinic, Gasser met Dr. Craig Thorne, a physician specializing in occupational medicine, who thought Gasser should be on limited duty because he was taking Coumadin. Dr. Mirsky wrote a letter to Dr. Smith-Jeffries, Dr. Thorne's supervisor, regarding Gasser's condition. In the letter, Dr. Mirsky stated that Gasser was "not at any excessive risk of bleeding" unless he experienced "significant trauma."[4] Because

---

[3] Dr. Smith-Jeffries testified that the Clinic's documentation concerning Gasser's return to full duty is, at best, inconsistent. She stated that the "physician's note clearly states that no full duty while on coumadin, that he should be returned to limited duty." She further testified that a different physician noted on Gasser's chart that Gasser should be returned to full duty; although this was crossed out and "limited duty" circled, "the police officer who was on duty at that time" wrote "return to full duty" on the form.

[4] At trial, Dr. Mirsky explained that his assessment was based on Gasser's international normalized ratio ("INR"), which is a way to

Dr. Mirsky understood Gasser's responsibilities to be supervisory, Dr. Mirsky saw no reason to "restrict [Gasser] from working as a full duty sergeant." Although Dr. Thorne was inclined to leave Gasser on limited duty, he consulted Dr. Smith-Jeffries because "Gasser really wanted to work."

Dr. Smith-Jeffries agreed with Dr. Thorne's preliminary diagnosis and was not convinced by Dr. Mirsky's letter that Gasser should return to full duty. The letter "perplexed" Dr. Smith-Jeffries because Dr. Mirsky acknowledged that Gasser was at an excessive risk of bleeding if he experienced "significant trauma," but nevertheless urged his return to full duty. Dr. Mirsky believed Gasser could resume his responsibilities as a "full duty sergeant," based on what Gasser told him about his supervisory duties as a sergeant. The relevant question for Dr. Smith-Jeffries, however, was not whether Gasser could resume supervisory duties, but whether he was "fit for full duty," which includes patrol duty.

Ultimately, Drs. Thorne and Smith-Jeffries decided to refer Gasser to another hematologist, Dr. Joseph P. Catlett, for an "independent opinion." After examining Gasser in late June 1999, Dr. Catlett sent a letter to Dr. Smith-Jeffries in which he concluded that Gasser had an increased risk of "trauma-associated bleeding due to Coumadin use." However, rather than giving Dr. Smith-Jeffries an independent opinion of Gasser's fitness for full duty, Dr. Catlett "defer[red] to [her] expertise" and told her "the decision lies with [her] office." Dr.

---

measure blood's ability to clot. Dr. Mirsky stated that when Gasser's INR tests between two and three he "is not at risk of excessive bleeding." He also testified that Gasser "regularly tested" at that level and that over time a patient's INR level stabilizes. At the time of trial, Gasser had been on Coumadin for six years without experiencing "any excessive bleeding."

Smith-Jeffries was not satisfied with this deferential position and decided to have another physician render an independent judgment.

She contacted the occupational health clinic at Johns Hopkins and scheduled Gasser to see Dr. Virginia Weaver in August 1999. Dr. Weaver is a board-certified physician in internal and occupational medicine. After meeting with Gasser, Dr. Weaver concluded that he faced an "increased risk for bleeding" as a police officer taking Coumadin. She was concerned that he might suffer severe trauma and excessive bleeding when "engaging in high speed pursuits, participating in raids, [or] discharging firearms at persons." For these reasons, Dr. Weaver believed Gasser "would be a threat to coworkers and to the public [because] he could become incapacitated very quickly and then he would not be there to assist coworkers." Given Gasser's experience and desire to return to full duty, Dr. Weaver thought that it "would have been wonderful" if he could have maintained a job as a trainer or supervisor without any time on the street. But recognizing that this was not possible under the Police Department policy, she recommended that he not return to full duty.

Based on Dr. Weaver's report, Dr. Smith-Jeffries concluded that her original assessment was correct, that Gasser faced an "increased risk for harm, and that he should not work as a full duty police officer." The consequences to Gasser were severe. Beyond making Gasser ineligible for overtime pay and further promotion, the Police Department took Gasser's uniform, badge, and gun. It also confined him to desk duty and did not allow him to visit crime scenes. The Police Department also generally prohibited him from riding in a squad car for fear that a car in which he was riding might, in an emergency, be diverted to a crime scene where he could suffer life-threatening physical trauma.

Although the Police Department never returned Gasser to full duty, it did return his uniform, badge, and gun in December 1999. Shortly thereafter, however, the Police Department initiated the process of involuntary retirement. Gasser brought this suit before that process could be completed.

At trial, Gasser presented to the jury the deposition testimony of Dr. Francis A. Thomas, a vocation rehabilitation specialist. Gasser used the testimony to establish the number of jobs the Police Department regarded him as unable to perform. Dr. Thomas began his analysis by determining the universe of jobs in the Washington-D.C. area for which Gasser was qualified absent any impairment. He found 206,000 such jobs. Dr. Thomas then removed from this group those jobs the Police Department regarded Gasser as unable to perform. Rather than removing jobs that involve a risk of physical trauma, however, Dr. Thomas presumed that Gasser would be able to perform only those jobs with responsibilities that resembled the desk duties he performed while on limited duty. He therefore removed from consideration all "heavy duty jobs" and "medium type jobs" and presumed that the Police Department regarded Gasser as able to perform only "light and sedentary type jobs." So restricted, Gasser could perform only 28.6% of the 206,000 jobs for which Dr. Thomas determined he was otherwise eligible. Dr. Thomas did not take into account the driving restriction the Police Department placed on Gasser, nor did he specifically analyze the types of law enforcement jobs Gasser was able to perform.

After entry of judgment on the verdict, the District renewed its motion for judgment as a matter of law. The district court ruled that (1) even though Dr. Thomas erred in assuming that Gasser could perform only light and sedentary jobs, this error was offset by evidence that, in the District's view, Gasser could not perform jobs involving driving, and (2) that Gasser

presented sufficient evidence for the jury to conclude he was not a direct threat to his own safety.

Gasser filed a post-trial motion to alter or amend the judgment to include his immediate reinstatement to full-duty status, lost overtime wages and prejudgment interest, attorney fees and costs, and promotion to Lieutenant. The court amended the judgment to include all the relief requested except for the promotion, finding insufficient evidence in the record to justify this.[5]

The District now appeals the district court's order denying judgment as a matter of law. Gasser cross-appeals, claiming the district court should have ordered the Police Department to promote him to Lieutenant.

## II.

We review de novo the district court's denial of the District's motion for judgment as a matter of law. *See Curry v. District of Columbia*, 195 F.3d 654, 658-59 (D.C. Cir. 1999). If the evidence supporting the verdict is "significantly probative," the verdict will stand "unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Id.* at 659 (quoting *Smith v. Wash. Sheraton Corp.*, 135 F.3d 779, 782 (D.C. Cir. 1998)) (internal quotation marks omitted). Our duty is to "draw all reasonable inferences" in Gasser's favor without "mak[ing] credibility determinations or weigh[ing] the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). We will therefore "disregard all evidence favorable to" the District "that the jury is not required to

---

[5] The court awarded Gasser $64,179.71 in lost overtime wages and prejudgment interest, and $157,397.20 in attorney fees and costs.

believe" and "give credence to the evidence favoring" Gasser. *Id.* at 151.

The District asks us to vacate the judgment below for either of two reasons: because Gasser presented insufficient evidence that his disability, if any, substantially limited his ability to work, *see Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114-16 (D.C. Cir. 2001) (en banc), or because the District adequately showed that he poses a direct threat to his own safety, which the Supreme Court has held is an affirmative defense to Disabilities Act liability, *see Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86-87 (2002). We reach only the District's first argument.

The Disabilities Act provides that a covered employer shall not "discriminate" against a disabled individual because of his disability. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4. A "disability" is not just a "physical or mental impairment," as common usage might suggest. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1). The Disabilities Act also prevents employers from taking adverse employment actions against those they "*regard[] as having*" a physical or mental impairment. 42 U.S.C. § 12102(2)(C) (emphasis added); 29 C.F.R. § 1630.2(g)(3).[6] The purpose of "regarded as" claims is

---

[6] The Supreme Court has recognized two ways an individual may be "regarded as" disabled. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999) (employer's mistaken belief either that employee has a disability or that employee's actual disability substantially limits major life activity); *see also Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521-22 (1999); *Haynes v. Williams*, 392 F.3d 478, 481 n.2 (D.C. Cir. 2004). The Equal Employment Opportunity Commission's regulations suggest a third. 29 C.F.R. § 1630.2(*l*)(2) (substantial limitation arising from others' attitudes about impairment).

to protect employees from "misperceptions [that] often 'resul[t] from stereotypic assumptions not truly indicative of . . . individual ability.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999) (quoting 42 U.S.C. § 12101(7)) (second and third alterations in original). An employer therefore may run afoul of the Disabilities Act "when it makes an employment decision based on a physical or mental impairment, [whether] real or imagined." *Id.* at 490.

In "regarded as" cases, not every adverse employment action gives rise to liability under the Disabilities Act. The "regarded as" disability must "substantially limit[]" a "major life activit[y]." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1); *see Haynes v. Williams*, 392 F.3d 478, 481-82 (D.C. Cir. 2004).[7] The District argues that any limitations it regarded Gasser as having were not "substantial[]," *see Sutton*, 527 U.S. at 490-91, and that Gasser did not prove that they were, as he must, *see Haynes*, 392 F.3d at 482.

In *Sutton*, the Supreme Court, relying on Equal Employment Opportunity Commission regulations, held that a Disabilities Act plaintiff like Gasser must demonstrate that he is precluded from a "substantial class of jobs" or a "broad range of

---

[7] What constitutes a "major life activity" is not at issue in this appeal, although the District raised the issue before the district court. Gasser claims that the District discriminated against him because of a perceived disability that would substantially limit his ability to work. Whether "working" is a "major life activit[y]" under the Disabilities Act, as the Equal Employment Opportunity Commission's regulations suggest, 29 C.F.R. § 1630.2(i), is a question we have not yet decided. Like the Supreme Court, *see Sutton*, 527 U.S. at 492, we have assumed *arguendo* that it is, *see Duncan*, 240 F.3d at 1114 n.1, despite the "difficulties the issue presents," *id.* at 1117 (Randolph, J., concurring); *see Sutton*, 527 U.S. at 492. We do so again in this case.

jobs,"[8] not just "one type of job, a specialized job, or a particular job of choice." 527 U.S. at 492; *Duncan*, 240 F.3d at 1115; *see* 29 C.F.R. § 1630.2(j)(3)(i). "If jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton*, 527 U.S. at 492.

It is not very precise to define a "substantial" limitation as preclusion from a "substantial" class or "broad" range of jobs. Whether a limitation precluding a plaintiff from 100 jobs is "substantial" depends, in part, on whether the plaintiff is otherwise qualified for 200 jobs or 200,000. In *Duncan* we explained that the relevant inquiry "depends primarily on the availability of jobs for which the impaired person qualifies," which must be an "individualized inquiry." 240 F.3d at 1114 (citation and internal quotation marks omitted). Our holding in *Duncan* was as follows:

> [T]he [Disabilities Act] requires a plaintiff . . . to produce some evidence of the number and types of jobs in the local employment market in order to show he is disqualified from a substantial class or broad range of such jobs; that is, the total number of such jobs that remain available to the

---

[8] Gasser urges affirmance based on his preclusion from a substantial class or broad range of jobs. The District claims Gasser is limited to arguing only that he has been precluded from a broad range of jobs because he did not present the other theories to the jury. The usual rule is that a prevailing party may support the judgment on any ground raised or decided in the district court. *See, e.g.*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 38-39 (1989); *Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 481 (1976); *Nat'l Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 289 (D.C. Cir. 1993). The record sufficiently supports Gasser's having raised his contention regarding a substantial class of jobs.

plaintiff in such a class or range in the relevant market must be sufficiently low that he is effectively precluded from working in the class or range.

*Id.* at 1115-16 (citing *Sutton*, 527 U.S. at 491-92). The plaintiff's evidence must be "significantly probative" so that the jury is not "left in the dark" about the vocational limitations the plaintiff faces. *Id.* at 1115.

Gasser concedes that the District's liability was premised on its view that he is "medically unable to perform jobs having duties or even possible duties with potential for trauma." Corrected Br. of Appellee/Cross-Appellant 22. But rather than looking to the reason Gasser was precluded from being a full-duty officer – potential for trauma – Dr. Thomas based his jobs analysis on the functions Gasser performed as a limited-duty officer. Dr. Thomas's analysis treated Gasser as precluded from "heavy duty jobs" and "medium type jobs" because, in Dr. Thomas's words, "[Gasser's] job now is to fill out forms on injured police officers." Dr. Thomas assumed Gasser was "restricted from a vast number of . . . jobs that require hard, outside kind of work, given the limitations that are placed on him."

This was error, as the district court recognized. Under *Duncan*, if the perceived impairment is, as Gasser concedes, that he cannot be exposed to risk of trauma, then the question is whether his preclusion from exposure to a risk of trauma "disqualified him from a substantial class or broad range of jobs." 240 F.3d at 1115. Dr. Thomas answered a different question – whether preclusion from engaging in heavy physical exertion disqualified Gasser from a substantial class or broad range of jobs. Dr. Thomas's testimony therefore was probative of jobs that require physical exertion, not just jobs that involve risk of trauma. *Compare Giordano v. City of New York*, 274

F.3d 740, 749 (2d Cir. 2001) ("[Plaintiff] introduced evidence that establishes at most that the defendants regarded him as disabled from police or other investigative or security jobs that involve a substantial risk of physical confrontation."). Gasser should have presented evidence of the number of jobs he would be unable to perform because they involve a risk of trauma. It is not sufficient to short-cut this analysis by looking at Gasser's responsibilities in his limited-duty role. There may well be medium- and heavy-duty jobs that do not involve risk of trauma. Dr. Thomas's analysis therefore was not probative – significantly or otherwise – of whether Gasser was precluded from a broad range or a substantial class of jobs, as *Duncan* requires. *See* 240 F.3d at 1115; *Giordano*, 274 F.3d at 749 ("The record contains no evidence from which we can infer that the [police department] thought, or had grounds for thinking, that other jobs in the public or private sector . . . carry the same nature or degree of risk."); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998) (concluding that police officer's back injury "disqualifies him from only a narrow range of jobs (those involving physical confrontation) and thus his impairment is not a substantially limiting one") (citation and internal quotation marks omitted).[9]

Gasser argues that *Duncan*'s evidentiary standard applies only to plaintiffs claiming preclusion from a broad range of jobs. Based on that premise, he urges us to uphold the judgment below despite the flaws in Dr. Thomas's analysis because the

---

[9] Gasser also claims that placing him on limited duty violated the Disabilities Act because the District "based its decision entirely on 'myths, fears and stereotypes.'" Corrected Br. of Appellee/Cross-Appellant 33 (quoting 29 C.F.R. pt. 1630, app.). The record does not bear him out. All indications are that the District sought informed, objective, individualized medical judgments from multiple physicians about the risks to which Gasser was exposed.

District regarded Gasser as unable to perform two classes of jobs: driving jobs and law enforcement jobs. The premise is mistaken. The class-of-jobs limitations he alleges must be "substantial" under the Disabilities Act. 42 U.S.C. § 12102(2)(A), (C). *Duncan*'s evidentiary standard applies to all claims of "substantial limitation," whether from a broad range or a substantial class of jobs. 240 F.3d at 1115-16. Gasser therefore failed to satisfy his evidentiary burden.

The district court reached the same conclusion but decided that the "error was more than offset by the fact that [Dr. Thomas] did not omit from his consideration positions involving driving, which [the District] has precluded Plaintiff from doing." *Gasser v. Ramsey*, No. 00-534, mem. op. at 6 n.2 (D.D.C. Nov. 7, 2003). We do not believe this is correct. As discussed above, Gasser presented no evidence of the number of jobs erroneously included in Dr. Thomas's tally of jobs he could not perform – that is, medium- and heavy-duty jobs without a risk of trauma. Nor did Gasser present evidence of the number of jobs "involving driving" the District regards him as unable to perform. In fact, Dr. Thomas testified that when he conducted his analysis he did not know that the District had restricted Gasser from driving. The district court's ruling that one unquantified number can somehow "offset" another is inconsistent with *Duncan*'s requirement that the plaintiff present "some evidence" that is "significantly probative" of the "number and types of jobs" unavailable to the plaintiff. 240 F.3d at 1115. The District claims the limitation was not on driving generally, but on being in a squad car that, in an emergency, could be diverted to a crime scene where Gasser could be exposed to life-threatening trauma. Gasser presented no evidence justifying an inference that the driving limitation was more substantial than this. *Compare Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 524 (1999) ("At most, petitioner has shown that he is regarded as unable to perform

the job of mechanic only when that job requires driving a commercial motor vehicle – a specific type of vehicle used on a highway in interstate commerce.").

In a case like this, in which the jury-verdict loser was entitled to judgment as a matter of law, we have discretion to "instruct the district court to enter judgment against the jury-verdict winner" or to "return the case to the trial court" for it to assess "whether a new trial, rather than judgment for [the] defendant, should be ordered." *Weisgram v. Marley Co.*, 528 U.S. 440, 443-44 (2000). The latter disposition is appropriate if "the district court is better positioned" than we are to decide whether circumstances warrant a new trial. *Id.* Here it is not. Gasser was on "notice, before the close of evidence, of the . . . evidentiary deficienc[ies]" repeatedly alleged by the District in its motions for judgment as a matter of law. *Id.* at 454. The expert testimony he elicited from Dr. Thomas was insufficient. "It is implausible to suggest . . . that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail." *Id.* at 455. Gasser "had a full and fair opportunity to present [his] case," and "further proceedings are unwarranted." *Id.* at 444.

For the foregoing reasons, the district court's judgment on the verdict entered July 24, 2003, and its post-trial orders awarding reinstatement, lost overtime wages and prejudgment interest, and attorney fees and costs, are reversed. The case is remanded to the district court with instructions to enter judgment for the District of Columbia.

*So ordered.*