# United States Court of Appeals for the Fifth Circuit

No. 24-40520

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2025

Lyle W. Cayce
Clerk

Shanteria Noiel,

*Plaintiff—Appellant*,

*versus*

Roseland Management, L.L.C., *doing business as* Precision Spine Care,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:23-CV-79

_____

Before Stewart, Clement, and Willett, *Circuit Judges*.

Per Curiam:[*]

The law promises that no person should face racial discrimination—not in hiring, not in firing, and not in the workplace day-to-day. This case considers whether that promise was breached. Shanteria Noiel says she worked in a racially hostile environment. According to her, some comments came from coworkers, others from a supervisor, and others involved patients.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40520

She sued her then-employer, Roseland Management ("Roseland"), under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Roseland thought differently and moved for summary judgment. The district court reviewed the record and concluded that, taken together, it did not cross the legal line. The record also shows that Noiel failed to disclose most of these alleged indignities through the available remedial channels. She now appeals. Seeing no error with the district court's judgment, we AFFIRM it.

I

Shanteria Noiel, a Black woman, began working in 2017 as a certified medical assistant at a pain management clinic operated by Charles R. Gordon, M.D., P.A., doing business as Precision Spine Care ("Precision"). In November 2018, Roseland acquired certain assets from Precision and retained several of its employees, including Noiel. From that point forward, she remained in the same role at the Texarkana clinic, reporting to supervisory staff that included Dr. James Wages. She continued working for Roseland until February 2023.

Noiel testified that during her employment—first with Precision and later with Roseland—she observed and experienced several incidents of racially insensitive or discriminatory conduct. Some involved coworkers, including Melinda Smith, a nurse practitioner at Precision. Others involved her supervisor, Dr. Wages. Several of the incidents predated Roseland's acquisition of the clinic. Others occurred after Roseland became her employer. According to the record, some of the incidents were never reported to management, and others were raised for the first time on the day Noiel submitted her resignation.

Throughout her employment with Roseland, Noiel received multiple raises and was promoted to lead medical assistant. She remained in her role

without suspension, demotion, or formal discipline. She received a favorable performance evaluation shortly before her resignation.

Roseland maintained a written anti-harassment policy and provided employee training on workplace conduct. Noiel acknowledged receiving that policy and testified that she understood how to report workplace misconduct. She confirmed that she had used the company's complaint process in the past.

On April 28, 2023, Noiel filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge named Precision, not Roseland, and alleged that Dr. Wages and Smith made offensive comments about Black people. It further stated that Noiel resigned because Black patients were not treated as well as White patients. The EEOC issued a dismissal notice without determining the merits.

Noiel then filed suit in the United States District Court for the Eastern District of Texas. Her amended complaint asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Texas Labor Code. She alleged that she was subjected to a hostile work environment, race discrimination, and constructive discharge. The district court recounted nine specific incidents that Noiel cited in support of her claims:

> **Incident 1:** On or around Plaintiff's first day at Precision (August 7, 2017), Plaintiff's white co-worker, Ms. Smith, saw pictures of Plaintiff's children and asked Plaintiff if they have "the same daddy."

> **Incident 2:** Shortly after August 7, 2017, Ms. Smith stated that a black mutual acquaintance was from the "hood," that it was "not a good area," and that it was "poor."

> **Incident 3:** On March 5, 2018, while discussing a patient's comments about Fouke, Arkansas, Ms. Smith told Plaintiff "Nobody from Fouke likes Black people," that Plaintiff

"better be careful because she did not want to end up being locked in someone's basement the way people from Fouke normally feel."

**Incident 4:** Sometime before July 26, 2019, a patient told Plaintiff that he did not want "her Black skin touching his skin," and Dr. Wages laughed, said "Oh he's just old."

**Incident 5:** Sometime around 2020, Plaintiff's supervisor, Dr. Wages, told Plaintiff "God does not like Black people."

**Incident 6:** Sometime in the summer of 2022, Dr. Wages told Plaintiff's white co-worker, Samantha Rogers, "not to hire any more Black employees because when two or more are together, things change" while Plaintiff was present.

**Incident 7:** Between January 31, 2022, and November 7, 2022, Plaintiff was paid less than her white co-worker Savannah Roberts, who held the position(s) of Precertification Specialist and New Patient Scheduler.

**Incident 8:** Throughout the entirety of Plaintiff's employment, Dr. Wages routinely commented to Plaintiff that Black patients "smell like weed" and "looked like they are on drugs."

**Incident 9:** Throughout the entirety of Plaintiff's employment, Dr. Wages routinely denied pain medication to black patients two to three times per week but did not deny pain medication to similarly situated white patients.

Roseland moved for summary judgment. It argued that several of the alleged incidents predated its ownership, that the remaining conduct was neither severe nor pervasive, and that it had no knowledge of the alleged harassment. The district court granted the motion. It held that Roseland was not responsible for the pre-acquisition conduct and that the remaining events, even if credited, did not establish a hostile work environment under Title VII or § 1981. The district court then entered final judgment in

No. 24-40520

Roseland's favor, and Noiel timely appealed. She presses only her hostile work environment claim on appeal.

## II

We have appellate jurisdiction to review the district court's judgment. *See* 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*. *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (per curiam). Summary judgment is suitable when "the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Such a dispute occurs when "a reasonable jury could return a verdict for the nonmoving party." *Perry v. VHS San Antonio Partners, LLC*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a fact might affect the outcome of the case, it is material. *Id.* In reviewing the record, we "draw all reasonable inferences in favor of the nonmoving party" and refrain from making credibility determinations or weighing the evidence. *Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023). "Summary judgment can be affirmed 'on any grounds supported by the record,' even if we do 'not agree with the reasons given by the district court to support summary judgment.'" *Milton v. Texas Dep't of Crim. Just.*, 707 F.3d 570, 572 (5th Cir. 2013) (quoting *Lifecare Hosp., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005)).

## III

This case turns on whether the district court erred in granting summary judgment for Roseland on Noiel's hostile work environment claim. Noiel says it did. Roseland argues that Noiel failed to report several of the

incidents she now raises, and that it acted on those she did.[1] Although Roseland raised this argument in the proceedings below, the district court did not reach it, having resolved the case on other grounds. The record, however, bears out Roseland's position, so we address it here. *See Milton*, 707 F.3d at 572 (internal citation omitted).

A hostile work environment exists when the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up). To establish a claim of hostile work environment, one must show that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her] membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399–400 (5th Cir. 2021) (internal citation omitted). Noiel easily meets the first three elements. She is a Black woman who alleges that she was harassed because of her race. Nevertheless, this case turns on the fifth element, so we need not address the fourth.

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). But an employer is not vicariously liable

---

[1] Roseland raises this argument in its appellate brief, yet Noiel fails to address it in her reply brief.

for unreported conduct when it has an effective reporting system, and the employee chooses not to use it. *See id.* at 806–07; *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 432–33 (5th Cir. 2005). This rule does not apply when "the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher*, 524 at 808 (citing *Burlington*, 524 U.S. at 762–63). Thus, even if the conduct Noiel describes "affected a term, condition, or privilege of employment[,]" Roseland cannot be held liable unless it knew about it and failed to act. *See Johnson*, 7 F.4th at 400.

On appeal, Noiel relies on nearly every incident in the record—except for Incident 7—as she only presses her hostile work environment claim on appeal. But the record shows that Roseland had no notice of the conduct and, when notified, responded appropriately.

Regarding Incidents 1–3, they occurred while Noiel was employed by Precision, not Roseland. Noiel contends that Roseland is liable for those incidents under the successor liability doctrine. That doctrine serves as a narrow exception to the maxim that "a purchaser of assets does not acquire a seller's liabilities." *See* 51 C.J.S. Labor Relations § 69 (2024). "The doctrine is derived from labor law principles enunciated by the Supreme Court and serves to protect an employee when the ownership of his employer suddenly changes." *Rose v. Grappler Pressure Pumping, LLC*, No. 24-50251, 2025 WL 416996, at *1 (5th Cir. Feb. 6, 2025) (unpublished) (cleaned up).

But this argument is not properly before us, as Noiel did not raise it in the district court. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing

No. 24-40520

to adequately brief the argument on appeal." (citation omitted)). Noiel's summary judgment briefing did not discuss the successor liability doctrine. The district court noted as much:

> First, the Court notes that there is no dispute that Incidents 1 through 3 occurred while Plaintiff was employed by Precision, not [Roseland]. Further, these Incidents occurred outside of the statute of limitations period. While these incidents conceivably provide relevant background, Plaintiff fails to address why [Roseland] should be held responsible for incidents that indisputably occurred when she was not employed by [Roseland].

*Noiel v. Roseland Mgmt. LLC*, No. 5:23-CV-00079-RWS, 2024 WL 3811641, at *3 (E.D. Tex. July 25, 2024). Her failure to preserve this argument undercuts her cause. *See Rollins*, 8 F.4th at 398.

Even if she preserved this argument, it would collapse under its own weight. In support of it, she relies on *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745 (5th Cir. 1996), asserting that Roseland is liable here because successor liability applies if there is "substantial continuity" between predecessor and successor. She, however, misreads our holding in *Rojas*. There, we rejected successor liability where the predecessor remains "a viable entity." 87 F.3d at 750. Here, Precision continues to operate. In fact, Noiel moved to add Precision as a defendant in the district court, but the district court denied that motion. Furthermore, the record nonetheless shows that Precision addressed these incidents. Smith was counseled and apologized, and Noiel testified that the apology was genuine and that no further problems followed. That resolves our inquiry.

Moving to Incident 4—the racially charged comment by a patient—Noiel reported it. Afterward, Roseland reassigned Noiel from that patient, and she does not recall working with him again. Thus, Roseland took "prompt remedial action." *See Johnson*, 7 F.4th at 399.

No. 24-40520

Noiel did not report Incident 5. She testified that she overheard Dr. Wages say, "God does not like Black people," but did not understand the comment and never raised it with Human Resources or any supervisor. She continued working and was later promoted.[2]

As to Incidents 8 and 9, Noiel testified that she did not report concerns about disparate treatment of Black patients until the day she resigned. At that point, she gave no notice and left immediately, denying Roseland the chance to respond. She also did not follow Roseland's internal complaint procedures, which required reporting discrimination to Human Resources or the Compliance Office.

Considering all of this, Roseland is not vicariously liable for the conduct Noiel describes here. *See Faragher*, 524 U.S., at 807–08. It maintained an anti-harassment policy. Noiel received it, was trained on it, and understood how to report workplace misconduct. She had used that system before. But not here. She chose not to report the key events that now form the basis of her claim. Given the foregoing, we hold that the district court did not err in granting summary judgment.

_____

[2] As for Incident 6, the record shows that it was reported. Noiel alleges that Dr. Wages told a coworker not to hire more Black employees because "when two or more are together, things change." That coworker—Samantha Rogers—relayed the comment to Human Resources. But even assuming the statement was made, a single, isolated comment—reported by a third party and not directed at Noiel—does not establish a hostile work environment under Title VII. *See Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007) ("Title VII . . . is not a general civility code, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (cleaned up)). If true, that event is unfortunate, but it alone does not clear the hurdle of our hostile work environment caselaw.

No. 24-40520

IV

For the reasons stated herein, we AFFIRM the district court's judgment.